UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JENNIFER ANN UPTON,

        Plaintiff,

    v.

COUNTY OF EL DORADO, et al.,

        Defendants.

No.  2:19-cv-01972-JAM-DB

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

Jennifer Ann Upton ("Plaintiff") filed this lawsuit against the County of El Dorado, the El Dorado County Sheriff's Office, Sheriff John D'Agostini, Deputy Sheriff Jack Kerruish, Deputy Sheriff Evan Richardson, and Does 1-40 (collectively, "Defendants"), alleging several civil rights violations under 42 U.S.C. §§ 1983 and 1985.  See Compl. ECF No. 1.  Defendants move to dismiss: Plaintiff's first claim under § 1983 claim insofar as it alleges violations under the Eighth and Fourteenth Amendments; Plaintiff's claim under § 1983 for municipal liability (Monell claim); and Plaintiff's fourth claim under § 1985 for conspiracy to violate civil rights.  Notice of Mot. at 2, ECF No. 6. Plaintiff opposes the motion.  Opp'n, ECF No. 9.  For the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss.[1]

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for March 10, 2020.

1

# I.   FACTUAL SUMMARY[2]

On October 1, 2017, Plaintiff awoke to Deputy Sheriffs Jack Kerruish ("Kerruish") and Evan Richardson ("Richardson") at her front door. Compl. ¶ 17. Kerruish and Richardson forced their way into Plaintiff's home when she opened her front door. Id. Plaintiff took a step back into the house and Kerruish grabbed her left arm and twisted it behind her back. Id. Plaintiff asked Kerruish to stop and indicated that he was hurting her. Id. Kerruish kept Plaintiff's arm twisted behind her back and told her to "quit resisting." Id. Kerruish forced Plaintiff over to her kitchen table where he handcuffed her and told her to take a seat in one of the chairs. Id.

At this point, Plaintiff's husband entered the living room and Kerruish and Richardson beat him until he was bleeding. Id. ¶ 18. Thereafter, an unnamed sheriff's deputy forced Plaintiff outside and sat her down on the stairs leading up to her house. Id. ¶ 19. Still handcuffed, Plaintiff told the deputy she was in pain and asked him to loosen the handcuffs. Id. The deputy refused. Id. Plaintiff informed the deputy that she had Lupus and having her hands behind her back was, as a result, especially painful. Id. Eventually, another sheriff's deputy loosed Plaintiff's handcuffs and re-handcuffed her hands in front of her. Compl. ¶ 20. Plaintiff was then told that she was under arrest for domestic violence. Id.

Plaintiff suffered injuries to her neck, head, arms, and breasts as a result of the force used during her arrest and

---

[2] The Court has accepted the allegations in the Complaint as true only for purposes of this motion to dismiss.

receives ongoing medical treatment.  Id. ¶¶ 26, 27.  Plaintiff

was subsequently charged with, and acquitted of, resisting,

obstructing, or delaying a peace officer in the performance of

his duties in violation of California Penal Code § 148(a).  Id.

¶ 4.  During these criminal proceedings, Plaintiff raised

excessive use of force by Defendants as an affirmative defense.

Id.


                    II.   OPINION

     A.   Legal Standard

     Federal Rule of Civil Procedure 8(a)(2) requires "a short

and plain statement of the claim showing that the pleader is

entitled to relief."  A suit must be dismissed if the plaintiff

fails to "state a claim upon which relief can be granted."  Fed.

R. Civ. Proc. 12(b)(6).  To defeat a Rule 12(b)(6) motion to

dismiss, a plaintiff must "plead enough facts to state a claim

to relief that is plausible on its face."  Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 570 (2007).  This plausibility

standard requires "factual content that allows the court to draw

a reasonable inference that the defendant is liable for the

misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009).

     "At this stage, [while] the Court 'must accept as true all

of the allegations contained in a complaint,'" it need not

"accept as true a legal conclusion couched as a factual

allegation."  Id.  In dismissals for failure to state a claim,

leave to amend the pleading should be granted, unless a

"pleading could not possibly be cured by the allegation of other

3

facts." Cooks, Perkiss, & Leiche, Inc. v. N. Cal. Collection

Serv., Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).

   B.   Analysis

      1.   The Sheriff's Office and Sheriff D'Agostini

   As an initial matter, the Court finds that the El Dorado

County Sheriff's Office and Sheriff D'Agostini must be dismissed

as defendants. See Mot. to Dismiss ("Mot.") at 2, n.2-3, ECF

No. 6. Although municipalities, such as cities and counties,

are amenable to suit under Monell v. Dept. of Social Services,

436 U.S. 658 (1978), departments of municipal entities are not

"persons" subject to suit under § 1983; therefore, the Sheriff's

Office—a local law enforcement department—is not a proper party.

Hervey v. Estes, 65 F.3d 784, 791-92 (9th Cir. 1995). As such,

Plaintiff cannot pursue her remaining § 1983 claims against the

Sheriff's Office. See Boone v. Deutsche Bank Nat'l Tr. Co., No.

2:16-cv-1293, WL 117966 at *3 (E.D. Cal. 2017) ("Because the

Solano County Sheriff's Department is not a 'person' within the

meaning of [§] 1983, plaintiffs cannot maintain their claims

against it under that statute as a matter of law.").

   Similarly, it is well-established that official-capacity

suits "generally represent only another way of pleading an

action against an entity of which an officer is an agent."

Hafer v. Melo, 502 U.S. 21, 25 (9th Cir. 1991). Thus, a

defendant that has been sued in an official capacity in addition

to the entity, may be dismissed "as a redundant defendant."

Center For Bio-Ethical Reform, Inc. v. L.A. County Sheriff

Dept., 533 F.3d 780, 786 (9th Cir. 2008). Plaintiff named

Sheriff D'Agostini as a defendant in his official capacity in

1  addition to the County of El Dorado.  See Compl. ¶ 8.  Sheriff

2  D'Agostini is, thus, a redundant defendant and must be

3  dismissed.

4      Accordingly, the Court DISMISSES both the El Dorado County

5  Sheriff's Office and Sheriff D'Agostini as defendants.  To the

6  extent that Plaintiff alleges a § 1985 claim against the

7  Sheriff's Office and Sheriff D'Agostini, their dismissal is

8  inconsequential as the § 1985 claim is dismissed for the reasons

9  discussed below.

10              2.    Excessive Force—Individual Officers

11      "Section 1983 creates a private right of action against

12  individuals who, acting under color of state law, violate

13  federal constitutional or statutory rights."  Deveraux v. Abbey,

14  263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not

15  itself a source of substantive rights, but merely provides a

16  method for vindicating federal rights elsewhere conferred."

17  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (internal

18  quotation marks and citations omitted).  To establish § 1983

19  liability, a plaintiff must show: (1) deprivation of a right

20  secured by the Constitution and laws of the United States, and

21  (2) that the deprivation was committed by a person acting under

22  color of state law.  Tsao v. Desert Palace, Inc., 698 F.3d 1128,

23  1138 (9th Cir. 2010).

24      Plaintiff's first claim under § 1983 is for unlawful use of

25  force, excessive force, and cruel and unusual punishment under

26  the Fourth, Fourteenth, and Eighth Amendments.  See Compl.

27  ¶¶ 15-41.  Defendants concede that, pursuant to Graham, 490 U.S.

28  386, this claim is facially valid under the Fourth Amendment.

Mot. at 5.  "Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ."  Id. at 394.  Accordingly, Plaintiff's § 1983 Fourth Amendment excessive force claim will go forward.  By contrast, Plaintiff's § 1983 Eighth Amendment claim must fail.  As Defendants correctly point out, the "Cruel and Unusual Punishments Clause 'was designed to protect those convicted of crimes'" and, thus, applies to post-sentence incarcerated persons, not Plaintiff's pre-arrest excessive force claims.  Whitley v. Albers, 475 U.S. 312, 318 (1986); Mot. at 5.

The Fourteenth Amendment is, similarly, not the appropriate constitutional provision under which to pursue pre-arrest excessive force claims.  "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."  Graham, 490 U.S. at 395 (emphasis in original).  "Because the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing [excessive force] claims."  Id. (emphasis added).

Plaintiff "cannot 'double up' constitutional claims in this way: Where a claim can be analyzed under 'an explicit textual source' of rights in the Constitution, a court may not also

6

assess the claim under another, 'more generalized,' source.
Ramirez v. Butte-Silver Bow County, 298 F.3d 1022, 1029 (9th
Cir. 2002) (citing Graham, 490 U.S. at 394-95 (where excessive
force claims were properly analyzed under only the Fourth
Amendment, not also under substantive due process)).  Thus, the
Fourth Amendment alone governs the constitutionality of the
amount of force used during Plaintiff's arrest.  The Eighth and
Fourteenth Amendments are inapposite here.

        Accordingly, Plaintiff's § 1983 excessive force claim is
limited to the Fourth Amendment and the Court DISMISSES the
first cause of action to the extent it relies on the Eighth and
Fourteenth Amendments.

                3.    Monell

        Municipalities can be sued directly under 42 U.S.C. § 1983
for an unconstitutional custom, policy, or practice.  Monell,
436 U.S. at 690.  To establish municipal liability, a plaintiff
must show (1) he possessed a constitutional right and was
deprived of that right, (2) the municipality had a policy,
(3) the policy amounts to deliberate indifference to the
plaintiff's constitutional right, and (4) the policy was the
moving force behind the constitutional violation.  Sweiha v.
Cnty. of Alameda, No. 19-CV-03098-LB, WL 48482227 (N.D. Cal.
2019) (citing Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130
F.3d 432, 438 (9th Cir. 1997)).  A plaintiff can establish the
existence of a policy or custom with: (1) proof that a municipal
employee committed the alleged constitutional violation pursuant
to a formal government policy, or a "longstanding practice or
custom," which constitutes the standard operating procedure of

7

the local government entity; (2) proof that the individual who

committed the constitutional tort was an official with final

policy-making authority and that the challenged conduct was thus

an act of official government policy; or (3) proof that an

official with "final policymaking authority" ratified a

subordinate's unconstitutional decision or action and the basis

for it.  Gillete v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir.

1992).  Plaintiffs assert a Monell claim under the first theory

and possibly also the third theory.  See Compl. ¶¶ 16, 32, 44,

50, 64, 68, 79, 82.

     Plaintiff has scattered allegations in support of a Monell

claim throughout the complaint.  Id.  However, those

allegations, taken together, are insufficient to support either

the existence of an unconstitutional custom or policy or the

ratification of a subordinate's unconstitutional action.  An

unwritten policy or custom can form the basis of a Monell claim,

but it must be so "persistent and widespread" that it

constitutes a "permanent and well settled" practice.  Monell,

436 U.S. at 691.  And "[l]iability for improper custom may not

be predicated on isolated or sporadic incidents; it must be

founded upon practices of sufficient duration, frequency, and

consistency that the conduct has become a traditional method of

carrying out policy."  Trevino v. Gates, 99 F.3d 911, 918 (9th

Cir. 1996).  The complaint must "put forth additional facts

regarding the specific nature of [the] alleged policy, custom,

or practice.  AE ex rel. Hernandez v. Cnty of Tulare, 666 F.3d

631, 637 (9th Cir. 2012).

     Plaintiff alleges the County of El Dorado has a pattern,

practice, custom, or policy of "utilizing excessive force . . . against individuals such as Plaintiff when they are called in on Domestic Violence/Welfare calls."  Compl. ¶¶ 16, 32, 50, 68. Plaintiff alleges the same pattern or practice specific to Kerruish.  Id. ¶¶ 16, 44, 64.  However, these boilerplate allegations do not contain any factual assertions that explain what a custom of practice of "using excessive force" means in a practical and factual sense.  And Plaintiff's recitation of the basic elements of a Monell claim, supported only by facts specific to her arrest, fails to show the practice was "of sufficient duration, frequency, and consistency such that the alleged custom or practice has become a traditional method of carrying out policy."  Harper v. Cnty of Merced, Case No. 1:18-cv-00562, WL 5880786 at *6 (E.D. Cal. 2018).

Insofar as Plaintiff also asserts a Monell claim under a theory of ratification, an isolated constitutional violation can give rise to municipal liability if ratified by a person with "final policymaking authority."  Christie v. Iopa, 176 F.3d 1231, 1238 (9th Cir. 1999).  But Plaintiff does not present any factual allegations suggesting a county official approved or ratified this alleged unconstitutional practice.  To show ratification, a plaintiff must prove "that the authorized policymakers approve a subordinate's decision and the basis for it."  Id. at 1239 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).  Therefore, ratification requires knowledge of the alleged constitutional deprivation.  Id. Plaintiff merely alleges that the County of El Dorado "ratified [the] conduct [of the unnamed deputies]" and that it "knew or

9

1   should have known that their conduct ratified the use of

2   excessive force."  See Compl. ¶ 13. This lone, conclusory

3   allegation is insufficient to state a cognizable claim.  See

4   Hicks v. Cnty of Stanislaus, Case No. 1:17-cv-01187, WL 347790

5   at *6 (E.D. Cal. 2018) (dismissing a ratification claim where

6   the complaint contained "no factual allegations to support the

7   claim that the County 'approved, ratified, condoned, encouraged,

8   south to cover up, and/or tacitly authorized' the conduct

9   . . . .").

10      Accordingly, the Court dismisses Plaintiff's § 1983

11  municipal liability claim under Monell.

12              4.   Conspiracy to Violate Civil Rights

13      Conspiracies to interfere with civil rights are made

14  actionable under 42 U.S.C. § 1985.  Section 1985 contains three

15  subsections, but Plaintiff did not plead a specific subsection

16  in her complaint.  In her opposition to the motion to dismiss,

17  Plaintiff only addressed the second clause of subsection (2).

18  See Opp'n at 8.  As such, the Court has considered the second

19  clause of subsection (2) to be operative here.  Subsection (2)

20  deals with obstructing justice and intimidating parties,

21  witnesses, or jurors.  See 42 U.S.C. § 1985(2).  The second

22  clause of subsection (2) "concerns access to state or

23  territorial courts, giving rise to a cause of action where[:]

24  two or more persons conspire for the purpose of impeding,

25  hindering, obstructing, or defeating, in any manner, the due

26  course of justice in any State or Territory, with intent to deny

27  to any citizen the equal protection of the laws . . . ."

28  Portman v. Cnty of Santa Clara, 995 F.2d 898, 909 (9th Cir.

1993) (emphasis in original).

The "equal protection language of the second clause of [§]
1985(2) requires an allegation of class-based animus for the
statement of a claim under that clause." Id. at 909 (internal
quotation marks and citations omitted). Plaintiff's complaint
lacks facts supporting a claim that she was either denied access
to state courts or faced class-based animus. See Compl. ¶¶ 80-
81. Plaintiff merely alleges that "[e]ach of the aforementioned
[constitutional violations] were executed as a result of a
conspiracy by each and every one of the [Defendants] . . . ,"
and that the conspiracy "included the excessive use of force,
taking steps to cover up the illegal use of force by drafting
false police reports . . . and by failing to complete reports
containing exculpatory information." Compl ¶¶ 80-81. These
conclusory allegations offer no underlying facts to support
Plaintiff's cause of action under section 1985(2). Accordingly,
the Court DISMISSES Plaintiff's section 1985 claim of a
conspiracy to violate her civil rights.

C.   Leave to Amend

Under Fed. R. Civ. Proc. 15(a), leave to amend "shall be
freely given when justice so requires." The Ninth Circuit has
"repeatedly stressed" that the Court must adhere to "the
underlying purpose of Rule 15 . . . to facilitate decision on
the merits, rather than on the pleadings or technicalities."
Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).
Accordingly, leave to amend should be granted, "unless [the
Court] determines that a pleading could not possibly be cured by
the allegation of other facts." Id. (citing Doe v. U.S., 58

11

F.3d 494, 497 (9th Cir. 1995)).

Plaintiff has requested leave to amend. Opp'n at 14. But the Court finds that amendment would be futile. Plaintiff, in her opposition, had the opportunity to set forth an offer of proof as to any additional facts that could be pled in support of her claims, but failed to include anything that demonstrates that the dismissed claims can be cured by amendment. The Court also finds amendment is not needed to allow Plaintiff to add a specific prayer for relief at the conclusion of the complaint. See Mot. at 2, n.1. As Plaintiff points out, a claim of damages is stated at the conclusion of each cause of action. See Opp'n at 14; Compl. ¶¶ 34-41, 52-59, 70-77, 83-89. The Court finds this to be adequate.

Accordingly, the Court DENIES Plaintiff's request for leave to amend the complaint. The remaining claims in this action are as follows:

1.  Excessive Force under the Fourth Amendment pursuant to 42 U.S.C. § 1983;

2.  Unreasonable Seizure and False Arrest under the Fourth Amendment pursuant to 42 U.S.C. § 1983; and

3.  Deliberate Fabrication of Evidence under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.


III.  ORDER

For the reasons set forth above, the Court GRANTS Defendants' Motion to Dismiss. The Court:

1.  DISMISSES Defendants the County of El Dorado Sheriff's Office and Sheriff John D'Agostini with prejudice;

12

1      2.   GRANTS Defendants' Motion to Dismiss the claim of

2 unlawful use of force, excessive force, and cruel and unusual

3 punishment under the Eighth and Fourteenth Amendments pursuant to

4 42 U.S.C. § 1983 with prejudice;

5      3.   GRANTS Defendants' Motion to Dismiss the Monell claim

6 pursuant to 42 U.S.C. § 1983 with prejudice; and

7      4.   GRANTS Defendants' Motion to Dismiss the claim of

8 conspiracy to violate civil rights pursuant to 42 U.S.C. § 1985

9 with prejudice.

10      IT IS SO ORDERED.

11 Dated:  March 31, 2020

12

13 JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28